IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | No. 1:14-cr-00070 |
| | : | |
| v. | : | |
| | : | (Judge Kane) |
| JABREE WILLIAMS, et al., | : | |
| Defendants | : | |

**MEMORANDUM**

Before the Court is the motion for a bill of particulars, filed by Defendant Jabree Williams and joined by his twenty co-defendants. (Doc. No. 388.) The Government filed its brief in opposition on July 23, 2015. (Doc. No. 408.) Defendant Williams and co-defendants Malik Sturdivant, Angel Schueg, Tyree Eatmon, James Abney, and Marquis Williams have filed briefs in support of the motion. (Doc. Nos. 389, 415, 445, 454, 455.) In addition, co-defendant Malik Sturdivant has filed a motion asking to file a reply brief to the Government's brief in opposition, and he has appended his proposed reply to his motion. (Doc. No. 411.) The Court will grant the motion to file a reply brief, but for the reasons that follow, the Court will deny the motion for a bill of particulars.

**I.   BACKGROUND**

On September 17, 2015, a federal grand jury returned a superseding indictment charging Defendant Jabree Williams and twenty co-defendants with (1) racketeering conspiracy in violation of 18 U.S.C. § 1962(d), part of the Racketeer Influenced and Corrupt Organizations Act ("RICO"); (2) conspiracy to distribute controlled substances in violation of 21 U.S.C. § 846; and (3) distribution of controlled substances in violation of 21 U.S.C. § 841. (Doc. No. 78.) In addition, four of Mr. Williams' co-defendants have been charged with firearms offenses pursuant

1

to 18 U.S.C. §§ 924(c) and 924(o).  (Id.)  The 34-page indictment describes the characteristics and membership since 2002 of the "Southside Gang," alleged to be a "violent, neighborhood gang" in the city of York, Pennsylvania.  (Id. ¶ 1 et seq.)  The indictment identifies the gang's alleged territory (e.g., id. ¶ 4), it outlines the organization's hierarchy (id. ¶¶ 8-14), it identifies the gang's alleged purposes (id. ¶ 17), and it alleges that the defendants "did knowingly and intentionally conspire" to commit criminal acts (id. ¶ 18).  The indictment continues to describe the defendants' overt acts committed in furtherance of the conspiracy, broken down into categories.  (Id. ¶ 24 et seq.)  The first category of overt acts includes violence towards a rival gang undertaken in furtherance of the conspiracy.  (Id. ¶ 25-27) (e.g., id. ¶ 26(11) ("On or about September 9, 2011, Jerrod Brown, Marquis Williams, and others engaged in a shootout with [rival] gang members on North Beaver Street, York.")).  The indictment also lists two specific acts of violence against other groups or individuals undertaken as part of the gang's activities.  (Id. ¶¶ 28-31.)

The indictment also catalogues sixty-two specific overt acts undertaken by individual defendants alleged to be in furtherance of the group's controlled substance trafficking activities.  (Id. ¶ 32.)  At least four of these overt act allegations pertain specifically to Defendant Williams.  (Id. ¶¶ 32(19), 32(31), 32(60), 32(61)).  For example, the overt act described in subparagraph 32(61) alleges that "[o]n June 22, 2014, [co-defendant] Jerrod Brown and Jabree Williams possessed a .380 KelTec P3AT with an obliterated serial number, which police recovered following their flight from a traffic stop."  (Id. ¶ 32(61).)  Typically, these overt act allegations

are related to police investigations, searches, or reports.[1]  (See e.g., id. ¶ 32(16)) ("On February 17, 2008, Tyree Eatmon and other Southside members possessed crack cocaine with intent to distribute, which police recovered during a search of a vehicle they were operating.").

The indictment also contains language which closely mirrors the language of the statutes Defendants are alleged to have violated.  (Doc. No. 78 ¶ 18) ("[Defendants] did knowingly and intentionally conspire to violate 18 U.S.C. § 1962(c), that is, to conduct and participate, directly and indirectly, in the conduct of the affairs of the enterprise through a pattern of racketeering activity, as defined in [RICO.]").

Separate from the indictment, the Government has provided to Defendants approximately 24,000 pages of discovery, including police reports from the alleged overt acts and other incidents, video evidence, and "710 Reports of Investigation (ROI) from the bureau of Alcohol, Tobacco, Firearms & Explosives."  (Doc. Nos. 389 at 6; 408 at 7.)  The Government also "provided a searchable Microsoft Excel spreadsheet which chronologically identified each of the events referenced in the ROI reports with cross-references to a synopsis of the event, the suspect involved, a summary of the activity, inventory of evidence seized, the ROI report number, and the police report number."  (Doc. No. 408 at 8.)  According to Defendant Williams, these reports merely contain "generalized allegations by unidentified government informants," so a bill of particulars is necessary.  (Doc. No. 389 at 6.)  In response to defense requests for clarification about the events inculpating Defendants in the conspiracy, the Government has replied that "it is under no obligation to provide notice and specific details of every event that demonstrates"

---

[1] The indictment also specifies the predicate incidents for Mr. Williams' co-defendants who have been charged with firearm offenses.  (See Doc. No. 78 ¶¶ 39 et seq.)

involvement with the conspiracy and racketeering enterprise, and that "there are numerous other day to day events" supporting the Government's position that will be introduced at trial. (Doc. No. 411 at 6.)

## II.     LEGAL STANDARD

"A bill of particulars is a 'formal, detailed statement of the claims or charges brought by a plaintiff or a prosecutor.'" United States v. Urban, 404 F.3d 754, 771 (3d Cir. 2005) (quoting Black's Law Dictionary (8th ed. 2004)). "[T]he granting of a bill of particulars remains a discretionary matter with the trial court," and it is "a matter of degree how far" in advance "an accused must be advised" of the details of the evidence against him or her. United States v. Addonizio, 451 F.2d 49, 64 (3d Cir. 1971) (quotations omitted).

Federal Rule of Criminal Procedure 7 governs the sufficiency of an indictment and provides for bills of particulars. Fed. R. Crim. P. 7(c), 7(f). At a constitutional minimum, an indictment must "[(1)] contain[] the elements of the offense intended to be charged and sufficiently apprise[] the defendant of what he must be prepared to meet, and (2) enable[] the defendant to plead an acquittal or conviction in bar of future prosecutions for the same offense." United States v. Hodge, 211 F.3d 74, 76 (3d Cir. 2000) (quotations omitted). Only when an indictment fails to satisfy those two requirements, and "thereby significantly impairs the defendant's ability to prepare his defense" or creates a likely risk of "prejudicial surprise at trial" must a court issue a bill of particulars. Urban, 404 F.3d at 771-72 (quoting United States v. Rosa, 891 F.2d 1063, 1066 (3d Cir. 1989)).

A number of considerations inform a court's analysis. For instance, the more exhaustive discovery has been in a criminal prosecution, the less likely it is that a bill of particulars is

necessary to safeguard a defendant from surprise or undue uncertainty. See Urban, 404 F.3d at 772.  In addition, because a bill of particulars "is designed to define and limit the government's case[,] there can be no variance between the notice given in a bill of particulars and the evidence at trial." United States v. Smith, 776 F.2d 1104, 1111 (3d Cir. 1985).  Defendants benefit from this early finality, but a bill of particulars constrains the prosecution from further factual development and from changes in its trial strategy.  See id.  A bill of particulars should not be used to force the wholesale uncovering of the prosecution's evidence and trial theory, but instead "should give the defendant only that minimum amount of information necessary to permit the defendant to conduct his [or her] own investigation." Id. (emphasis in original).

### III.   DISCUSSION

Defendants argue that they need a bill of particulars: (1) because the indictment is not specific regarding "how, when, or with whom [Defendants] agreed to participate" in the racketeering conspiracy; (2) because the basis for confidential informants' precipient knowledge is absent from the indictment and discovery; and (3) because the Government is using a "wait and see" disclosure schedule, turning over evidence only after witness interviews, and withholding disclosure until what the Government calls "an appropriate time." (Doc. No. 389 at 6-8.)  The Government has argued that the indictment and discovery, including affidavits of probable cause from confidential informants and the chronological listing of overt acts in the indictment and Excel spreadsheet, have been sufficient, especially given that a "bill of particulars is not a vehicle for disclosure of the minutiae of what the government intents to prove[.]"  (Doc. No. 408 at 7-9.)

The Court finds that a bill of particulars is not necessary to safeguard the Defendants'

interests in preparing their defenses and avoiding double jeopardy. The indictment, supported by the discovery, has provided Defendants with sufficient notice of the major incidents tying them to the alleged racketeering enterprise and conspiracy. See Hodge, 211 F.3d at 76. In addition, Defendants have access to an expansive discovery record, and while not all of the discovery is relevant to each defendant, the volume of material satisfies the Court at this juncture that enough material is relevant to each defendant to avert undue prejudice in the preparation of a defense. See Urban, 404 F.3d at 772. As to double jeopardy, the use of state court predicate convictions by the Government as well as reliance on federal and local law enforcement materials effectively assures Defendants that a double jeopardy defense, if available in this action, will be obvious and easily proven. By the same logic, the risk of confusion in future prosecutions is mitigated, because many or most of the alleged criminal acts undertaken by the conspiracy have already been separately considered by state authorities.

Furthermore, while the Government may not withhold its evidence and strategy indefinitely, Defendants' entitlement to advance notice is a question of degree. In a criminal prosecution of this breadth, ordering a bill of particulars would force the Government to a full stop on the continuing factual development of its case and would lead to advance notice not commensurate with Defendants' equitable entitlement to such disclosures. Of course, as the trial date nears, the Government's duty to disclose increases with the Defendants' entitlement to information, but the Court is confident that the Government and Defendants can facilitate the exchange of information and evidence in a way that avoids prejudice.[2] Consequently, the Court

---

[2] Defendants Jabree Williams, Angel Schueg, Tyree Eatmon, Malik Sturdivant, James Abney, and Marquis Williams have asked for specific bills of particulars as to them, in addition to joining in the motion for a joint bill of particulars. (Doc. Nos. 389, 411, 415, 445, 454, 455.)

will deny the motion for a bill of particulars.

IV.     **CONCLUSION**

For the foregoing reasons, the Court will deny Defendants' joint motion for a bill of particulars. An order consistent with this memorandum follows.

---

The Court's reasoning applies to those requests as well, and the Court will not order bills of particulars specific to those defendants.